Petition for A Re-hearing
[By Mr. E. Wickliffe, Sr.]
In this case, the Court is respectfully solicited to direct a re-hearing of the cause. In making this petition for his client, the counsel for Chiles feels fearful that he will appear troublesome beyond what duty enjoins on him, to the Court, in calling the attention of the Court again to the case which has already undergone two arguments before the Court, and, of course, consumed much of its time. But a careful examination of the case, and of the opinion of the Court, has satisfied him that, it is his duty to lay before the Court, the strong reasons which impel him to ask of this Court, to not only revise their opinion, hut finally, to reject the bill of the complainant altogether.
It is not the intention of this petition, to either question the soundness of the doctrines of law advanced by the Court, or to examine the nice and very elaborated opinions of the counsel on either side, heretofore presented to the Court. Their abstruSeness never had, nor have they now, allowed him to see their application. Indeed, almost every attenuated thread of the finely woven web of the complainant’s counsel, seems to have been brushed from the case by the opinion of the Court, save one, and that I shall attempt to show has Ho' relation to the case, however plausible it may be in theory: I mean so much of the opinion as goes upon the idea, that Mrs. Yates had theretofore exhausted her power.
The Court seem to concede that, under the statute, a feme may convey her estate (when examined, &c.) as *504 though she were feme sole. Indeed, such are the words of the act; and consequently, that the wife, with her huSband, may create a power to appoint by deed or will under her deed, of her own lands. But that the deed of Yates, Johnson and Yates &c. is void under the statute as to the feme, because her privy examination was not recorded before her death: If she was not acting under a power of attorney from her husband legally created, it is unquestionable that the statute declares her deed utterly void. It is a mere act in pays, a mere parol—incapable of confirmation. See Shackleford and Miller. It is weaker than confessions or conversations of the feme, which is evidence to no purpose, against her or any one. See the case of Hicks and Rodgers.
Recitals in deeds are at best secondary evidence, and are only evidence against parties to deeds and privies. Now, a man must surely make a deed before the recitals in a deed shall bind him. But this Court has, as your petitioner humbly conceives, inadvertently decided that though a feme coverl’s deed unrecorded, is utterly void, still that recitals in this void deed, are valid against her, and that both she and her devisees are estopt by them. Will not a reconsideration of this case enable this Court to perceive that this position is not only utterly repugnant to the opinion of the Court, but at war with all the analogies of law. The deed of the feme is not good without a privy examination duly recorded, because until the wife is removed out of the power of the husband, and, by the clerk or justices, is duly admonished, and has had the deed explained to her, she is supposed to act, in the signing even her name, under the control of her husband. To this jealousy of the law, of the power of the husband, or the cunning of the world, you, in one part of the opinion, give full force and fatal effect, and say that the deed of the 23d of December creates no power, because it is no evidence of the deliberate sense of the feme; and yet, to destroy the estate and defeat the wilL, you have decided that a deed, made and executed by and between Chiles, Johnson and Yates, destroys her estate; and that recitals in that deed, which is void as to her, estop her and her devisees to contest the fact, that she ever did in fact her *505 self, or authorize another to do it for her, execute the power to dispose of the property under the deed of 1813, or of any part of it. Take the case as it comes before the Court, and see what lengths the principle of evidence now first let into a court of justice, will go. Chiles, a trustee, and Yates and Johnson wish to defeat the power, and Chiles wants a salvo for his abuse of trust; and they make a deed reciting that he purchased land with the trust property, by the consent of Molly Yates. They duly acknowledge the deed, and show her Signature; and offer this as evidence that Mr. Chiles has acted for her in the trade, but deny that the paper as her deed, has any efficacy Whatever. To further illustrate the danger of the Court’s taking recitations in a void deed, as evidence against a feme, the Court has only to see how this deed was recorded. On the 24th of December, 1825, it is certified to be acknowledged by Yates and wife, and Johnson, but not until the 19th of January, is it proven to be the act and deed of Chiles.
With these remarks, I shall content myself with adding, that, save the recitals, there is not the shadow of evidence that Mrs. Yates in any manner executed, or even attempted to execute, the power, except by will; and these recitals being no evidence of the fact whatever, that the opinion of the Court proceeds upon mistake in supposing the fact proved—that she had executed the power.
But let us revert to the deed of 1813. By that deed, it is expressly limited to a devise, or to a conveyance by deed in writing, and if she appointed by deed, it was not to take effect after her death. Now, may I not ask for the deed? May I not ask that that deed shall, upon its face, not take effect until after her death; and can this be shown or pretended? Surely not. There is nothing in the case that can for a moment raise a thought, much less a presumption, that Molly Yates, by deed Or will; ever attempted to alienate the use in the trust property; while Chiles was trustee. The law so guards the feme covert, that property that passes by parol, is taken from her; that every bargain, conversation, Or acknowledgment, during coverture, can and shall rtot be made into evidence for any purpose; and to the very extreme ei *506 this rule has this Court gone, in the case of Hicks and Rodgers; hence, her written or parol admission, on the principle that she had executed the trust, would be wholly inadmissible. But on this point, Yates and his wife and her trustee, or Yates and Chiles, make a law for themselves. Yates conveys his whole estate to Chiles, to the use of Molly, his wife, for life, and to such as she by will or deed appoint, in fee—the deed to take effect after her death. Yates—or if he had not sense enough in fact to do so, his lawyer—had secured himself from the very evil which now overwhelms him. He provides that the use is first, not to pass by deed or will, in any manner out of his wife’s hands, during her life. If by will, the law restricted its operation; if by deed, however, then he provided a life estate to her and to himself, a support for his life, against her folly or the overreachings of her friends and confidents. This Court has, in the opinion, very properly drawn a distinction between an erroneous execution of a power, and an excessive execution of a power, and established the principle that, in the first case, the execution is wholly void; but in the latter, only voidable for the excess. Thus, if I authorize a man to sell my lands in fee, but in the sale, he warrants the title, the sale as to me is good, but not the warranty. But if I authorize a man to sell my estate after new year, or after my death; or after my son’s death, and he grant it before, the grant is utterly void. These cases are not only law, but given to illustrate the law; and yet the case of Molly Yates is much stronger: she was only able to convey, or exert a volition on the subject, from the power; she was for all purposes whatever, other than to execute the pow er, incompetent; and any deed of hers, to operate instanter, would have been utterly void. In the opinion at least of this petitioner, the law goes on the dread it has of the overreaching and the imbecility of the feme. A deed, according to Barwick’s case, is void as a deed, if it does not take effect instanter; and this doctrine or principle was acted on in the case of Barlow and Hinton. Suppose she had made a deed, appointing absolutely, while a feme sole, would her husband, would she, have been divested of the use—turned out of house and home, *507 and deprived of bread, by either law or chancery? Surely not. And if she had, by deed, declared that, at her death, the estate should pass &c. such deed, according to the opinion of this Court in the case of Barlow and Binton, could be revoked by will, and the estate would pass by the will, and not by the deed.
That Mrs. Yates, under the full persuasion that the land bought would, in all respects, be subject to her will, assented to the change of the property, there is the strongest probability—not only from the recitals, but the condition of the parties; but of this, this Court has no evidence; of the deliberate assent by deed, provided for in Yates’ deed. And no man believes or pretends that there was such deed. On the contrary, all the deeds and the will are referred to by both complainant and defendants, as the only deeds or writing whatever touching the trust estate; and the bill does not even allege, that the change of the personalty was made with the assent, written or parol, of Molly Yates.
From the commencement of this cause, your petitioner-only apprehended difficulty on the question of the resulting trust. He is candid in declaring that, he- did not for a moment suppose that the recital amounted to evidence of an execution, even of a feme sole. But if they did, and the deed were valid, then the question was settled in favor of the will. But if the deed was decided not to be the act and deed of Molly Yates, that then her rights were those, and those alone, secured to her by the deed of 1813, Even in the cases of infants, their confessions or statements while infants, are never taken to destroy their rights; even the answer of a guardian for the infant, to which the infant has sworn, has been held not to bind him when of full age, and permitted to defend; and this where the acts are not void, and where recitals in deeds after full age, acts in pais, or mere words after mature years, are made sometimes to work a confirmation of grants, as was decided by this Court, in the case of Phillips and wife against Green. But a feme’s acts are void; absolutely void, as no t only decided by all English jurists, but recognized by this Court, in the case of Breckenridge and Ormsby. Her deed of confirmation does not ratify *508 or confirm, when feme sole, what she did when covert. But here, not Mrs. Yates’ deed, but the recitals of a deed between Yates and Chiles, are made to estop her, and to divest her and her devisees.
The Court, in taking the recitals, or any other fact in this cause, as evidence against Molly Yates’ devisee, has cited no authority for so doing, and, from its great labor and research, it is presumed that none whatever exists, or the Court would have found it, and when it is the duty of the Court, if possible, to adopt the benign maxim, ut leges magis valeat quam juret, I respectfully ask is it right to substitute the contrary rule, to destroy the estate, rather than save it, and to effect that object, to introduce the dangerous and new evidence or presumptions drawn from the parol or other void acts of femes covert.
Hoping that I have said enough to draw the attention of the Court to, the kind of evidence upon which it has founded its opinion that Molly Yates had executed her power, I will not consume time in endeavoring to satisfy the Court, that the whole of the property is subject to the deed of 1813. And that, upon no principle earthly, pan the complainant be relieved under the deed of trust to him. It should be borne in mind that the deed to Johnson recites, that the deed for one of the tracts of land, to wit: that of Fossel and wife, for forty acres, had not been consummated, and the deed appears not to have been acknowledged until the 24th day of December, 1825; and there are no witnesses whatever to the deed; of course, it is only good from its acknowledgment; especially, as it was for the land of a feme covert.
The deed from Chiles &c. to Johnson was made and executed opt he 23d. That deed, of course, led the use and directed the trust of Fossel’s deed; for although it expressed to be for the use of Molly Yates, yet that use vas such as the deed of the 23d had created in Johnson; for, by the law, the title by the delivery of the deed to Chiles, vested eo instanter in Johnson; so that Chiles, as to this, title, never for one moment, was the trustee of Molly Yates; and surely, under the deed to Johnson, Molly Yates could devise it; nor can the expression of a use variant from the deed of Chiles to Johnson, executed *509 on the 23d, vary or change the rights of Molly Yates; nor can the recitals of Chiles and Yates, on the’23d, be made to recognize the peculiar trusts of Fossel’s deed to Chiles, of the 24th’ and Johnson, being no party to that deed, becomes vested with the estate as his deed vested him, and not as Chiles might have stood vested, had he not made the deed of the 23d.
Again. How can this Court relieve Johnson? By his solemn covenant, he stipulates to convey to whomsoever Molly Yates shall by will appoint. This was the condition upon which he received the estate, He appeared in the County Court, and then in this Court, and contested the will. This Court and the County Court both decide that it is the will of Molly Yates. And can he now deny it? Certainly not. By the terms of his agreement, he is to convey the land, no t to her heir, but her devisees; and yet this Court, against the express covenant of Johnson, directs him not to convey to the devisee. I may be told that the heirs have a right to follow the estate. Be it is so, for the argument. But how? Not in Johnson’s hands, but in that of Chiles, or that of the devisee. And for this purpose the cause is not prepared. The bill has not brought the whole of the heirs before the Court; nor has an affidavit been made that the bill is true, in charging that the complainant does not know the names of the heirs not made parties by their proper names; nor are those heirs styled such, properly before the Court. The law requires that the order shall he published two months successively, not weekly, but daily, if it is a daily paper, The printer only states that he published it weekly, from the 15th of August, 1834, and the order required an appearance on the 24th day of the September Term following. I have not the days of the meeting of the September term, but think it almost impossible that there could have intervened two months from the 15th of August, until the 24th day of the September term; and hence it is that the Court took no order to take the bill for confessed. At all events, I contend that, before the order, however regular, can be noticed here, that the evidence of its execution should have been made in the Court below, and the bill on that, taken for confessed, But that is not *510 done, The complainant then not being in a condition to be relieved, his covenant being express to convey, and the heirs not being before the Court, this Court has acted, in this particular, premature, in decreeing on the question of distribution; but should have dismissed the bill, if the decree below was disturbed. In conclusion — the counsel for the will can but hope, that the Court will see abundant reason for opening their decree, when they take a view of its consequence upon the parties, and when they and all the world must be convinced, at a single blush of the case, that if their decree stand, here is a case that exhibits melancholy evidence that an illiterate female, and illiterate men have had their plain intentions perverted, and their feet caught in a legal net of forms unintelligible to them and the world at large.
Since the days of our republic, the courts have endeavored to enforce the benign rule of carrying out the intention of the parties to a deed or a will, and never to overturn either, unless by the stern mandates of law. Here, every letter and every line shows what the intention of the parties was: of this there is not the shadow of ambiguity.
Yates, an imbecile, made sensible of his condition, conveys his whole estate, in trust, that his wife shall manage it, and finally dispose of it; and that her deed, or her will, alone, shall dispose of the fee. Chiles so covenants, that he will stand seized, And when Chiles takes the land, or a deed for it, he takes it under the deed of 1813; and when he says, to the use of Molly Yates, the law as well as his duty, required that the deed of 1813 should lead the use, Such intention is the honest one; an intention to defeat the deed of 1813, was dishonest: it would have been villainous; and can this Court impute it? Surely not, When the deed of 1825 is made to Johnson, it is expressly stipulated, that Johnson shall, in all respects, carry out the deed of 1813. The deed of 1813 recites, that Johnson is substituted in lieu of Chiles; and the same care is taken; that whatever disposition is made by Molly Yates, of the estate, it shall only be manifested by deed or will. She has made no deed, but made her will, in due and proper form. Is this not strong *511 er evidence of her intention—that she never had before conveyed—than the recitals of the deed of 1825? And I ask, if it is not conclusive that the failure more particularly to express the use in the land bought by Chiles, was the mere inadvertence of Chiles? and whether the humanity and equity of our system does not forbid that a feme shall lose her rights, by the ignorance of either herself, or that of her trustee? Take this case up, as Chancellors generally take up trusts, even where the trustee acts fraudulently, and the case is stripped of all its ambiguity and of all its evils: that is, begin at the root and go to the branches, and poor old Yates will not be unhoused, and trapped in the meshes, or bewildered in the mists, of the law. But, here you have the first act, and the last act, of the parties—all declaring that the deed of 1813 forms the basis of the fabric, and that the power of Molly Yates over the estate remains as it did by the deed of 1813—complete to pass it by deed or will. And I still maintain that intention between parties and privies, is not only the polar star, but the governing principle. That ours is an age of common sense, and not a time to overrule our understandings, and uproot our estates by the works and subtleties of the Jesuits, or polemics of the British school. Their policy is to uphold the heir, and that land shall descend, and not pass to his prejudice. Our policy is, that he who is free to acquire, shall be free to pass estates; and where the Courts can, they will uphold the right to do so; and that neither fiction nor error shall defeat the right.
Here Yates seems to have unbounded confidence in his Wife, in life, and willing to trust her in the article of death. She makes use of the grant during life, for her and his benefit, and makes provision for him by her will. This every man can see and understand. On this will and these deeds, nine hundred and ninety nine common men, out of a thousand, will agree to give Yates a life estate, and to the other devisees, the fee. But from the lore of the Plantagenets, or the Tudors and Stuarts, or the Guelphs, laws are extracted that unhouse Yates, and make him liable for rents, from the moment of his wife’s death; revoke the will as to favorite objects of Yates *512 and wife, and send the fee simple into the hundred named and nameless heirs, known and unknown, which have heritable blood, and can take. This little spec of land is not only to pass from Yates, and the favorite nephew of Molly Yates, who was her agent and friend to improve it, and endear it to her white living, but to become the property of strangers, by being put under the hammer, and the proceeds divided among those unknown to Molly and to Michael Yates, who created, by their joint labor, the capital that raised it; And, Yates is told, that his ignorance, and that of his wife and her trustee, has wrought this mischief upon him, as his only consolation,

May, 30.

R. Wickliffe.
The Petition having been considered, was overruled, with the following remarks by Judge Marshall:—
The deed from Fossel and wife, was executed by Fossel, though not by his wife, before the date of the deed of the 23d of December, 1823, and its form, and terms there fixed. It was in fact executed by the wife, on the 24th day of December, and is referred to in the deed of the 23d, as made, but not consummated, and its terms and effect ate, in our opinion, no more affected by the deed of the 23d of December, than if it had been fully executed before that day; and are as much approved by the said deed of the 23d of December, as those of the other deed conveying land to Chiles, as trustee of Mrs. Yates. For this reason, there was no distinction made between them, in the opinion as rendered.
This statement is made because the facts as to the execution of the second deed, were not particularly stated in the original opinion. The principles decided are left to stand upon the reasons and authority therein presented,
The petition is overruled.